UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 FEB -8  AM 10: 16

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff,* | ) Case No: 2:24-cv-133 |
| v. | ) |
| 1039 ECHOLS DRIVE, FRISCO, TEXAS, 75306, | ) |
| *Defendant.* | ) |

## DECLARATION

I, Andrew C. Braley, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been employed as a Special Agent with the Federal Bureau of Investigation (FBI) since June of 2021. I am currently assigned to FBI's Albany Office, investigating cybercrimes including computer intrusions and fraud related crimes. I also have experience working counterintelligence matters. As a Special Agent with the FBI, I have received training related to cyber security and open-source intelligence, and I have participated in the execution of search warrants involving electronic evidence, including searches of email accounts and computers.

2. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, all of whom I believe to be truthful and reliable. I have not included in this affidavit every detail I know about

this investigation. Rather, I have included only the information necessary to establish probable cause that the property is subject to forfeiture.

3.  I submit this affidavit to show probable cause to believe that the defendant Property, 1039 Echols Drive, Frisco, Texas, 75306, with all improvements and appurtenances thereon (the "Property"), was purchased with funds that constitute proceeds of a "pig butchering" fraud scheme or were involved in the commission of a fraudulent offense, in violation of Title 18, United States Code, Sections 1956 (laundering of monetary instruments and conspiracy to commit money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity), and therefore is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 19 U.S.C. §§ 1607-09 by 18 U.S.C. § 981(d).

4.  Based on Denton Central Appraisal District records for Denton County, Texas, the record owners of the Property are Feng Chen and Tianqiong Xu. The Property was appraised in 2022 at $1,493,447. Denton County Tax Assessor/Collector records indicate Chen and Xu paid taxes on the Property in 2023, at which time the taxable value was listed as $1,435,500. Records indicate Chen and Xu purchased the Property around November 2022, mortgaging only around $190,000 of the total purchase price.

## Facts Supporting Findings of Probable Cause

5.  Since on or around September of 2021, the United States Secret Service and the Federal Bureau of Investigation (the "Investigating Agencies") have been investigating a fraud scheme being used to steal fiat currency and cryptocurrency from individuals located throughout the United States. The scheme utilizes the social engineering of victims who independently navigate on the Internet to platforms for stock and or cryptocurrency investment advice. While on these platforms, the "threat actors" purporting to be investment experts

2

convince these victims to navigate to specific website URLs where they download fraudulent investment platforms to their electronic devices. The fraudulent investment platforms appear to be legitimate cryptocurrency exchanges where the victims can log in and see their investments grow. However, as soon as the victims send their cryptocurrency, the funds begin making their way through a complex laundering scheme. Since at least February 2021, victims of the scheme have been convinced to transfer custody of their cryptocurrency and/or fiat currency to the Target Subjects under the guise of customer deposits to these cryptocurrency exchanges. The victims later discovered they were unable to withdraw funds they deposited to their accounts, and in some cases, they were extorted for more cryptocurrency or fiat currency when attempting to withdraw. At this time, the FBI has identified approximately 120 victims with losses of approximately $9,547,180 associated with this scheme.

6.  On 12/13/2023, FBI Agents executed a search warrant issued out of the Eastern District of Texas to search the Property. The affidavit in support of that warrant is attached as Exhibit 1 and incorporated herein.

7.  The following items were located at the Property and identified as belonging to Feng Chen:

   a. Numerous documents for Feng Chen.

   b. A notebook containing the word "clex"[1] followed by two entries of the cryptocurrency, Tether, commonly known as "USDT" valued at 16643 USDT and

---

[1] CLEX LTD. Is a company that was listed as the subscriber on the GoDaddy account that registered the domain bf-ex.com and many other fraudulent cryptocurrency exchange domains used in pig butchering schemes.

26049 USDT. The same notebook contained a page labeled "BFEX" that contained IP addresses with passwords, appearing to be root credentials to servers.

c. An external hard drive containing numerous folders with source code for websites inside compressed zip folders. There is a folder named "bnbdt-backend-master.zip" and a folder named "bnbdt-frontend-main.zip".

d. A folder labeled "BFEX" that contains the source code for the website, "bf-ex.com".

e. Three notebooks containing handwritten cryptocurrency wallet seed phrases for MetaMask, imToken, Token Pocket, Trust Wallet, and TronLink[2].

8. Following the FBI search of the Property, the source code for the website "bf-ex.com" that was identified on an external hard drive (as described under item "d." of the above referenced list) was opened using a web browser by FBI personnel. The examination revealed that the website appeared the same as images provided to investigators by victims of the scam. Additionally, FBI personnel conducted database checks using file names identified on the external hard drive that contained the folders named "bnbdt-backend-master.zip" and a folder named "bnbdt-frontend-main.zip" (as described under item "c." of the above referenced list). It was

---

[2] MetaMask, imToken, Token Pocket, Trust Wallet, and TronLink are types of cryptocurrency wallets. Cryptocurrency wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency.

4

determined that source code and other computer files located on the drive were associated with numerous other fraudulent cryptocurrency investing platforms.

9. Based on my training, experience, and familiarity with this investigation, I believe the presence of these items within the Property during the search indicates that the execution of the scheme occurred within the Property.

10. On 1/8/2024, Chen, Xu and their two children received new Chinese passports that expire on 1/8/2026 from the Chinese Consulate in Houston, TX. That same day, Chen purchased tickets for his family to travel to China and they all departed the United States on 1/11/2024.

11. Open-source research on 01/21/2024 indicated the Property had been put up for sale. According to the website Zillow, the residence was listed for sale on approximately 1/15/2024, four days after Chen and his family left for China on their newly issued passports.

12. In addition to the Property, public records show that Chen is still the owner of a residence at 405 Spring Leaf Ct., Allen, Texas. Collin Central Appraisal District records for Collin County, Texas, indicate that Chen and Xu have 100% ownership of 405 Spring Leaf Ct., a property with a 2023 total assessed value of $498,000.

13. At the time of the search of the Property on 12/13/2023, FBI Agents interviewed Chen and Xu separately. During the interviews, Chen and Xu made the following statements:

    a. Both Chen and Xu indicated Chen's only official source of income is his employment with Justice Benefits Inc., a job which pays approximately $100,000.00 to $110,000.00 per year.

    b. Chen admitted to working with scammers and receiving payments for services he provided in cryptocurrency, specifically payments made to a Binance account

which Chen claimed has been funded by both him and by his parents-in-law. Chen stated that while not having in-depth knowledge of cryptocurrency, his parents-in-law use his cryptocurrency accounts. Throughout the interview, Chen also appeared to attempt to conceal financial information, including denying the extent of his involvement with cryptocurrency, not being forthcoming in disclosing significant cryptocurrency assets in his control, and not providing reasonable explanations for movements of cryptocurrency funds in his control.

c. While both Chen and Xu stated during their interviews that the Property was purchased with a significant amount of assistance – primarily from Chen's parents who are Chinese citizens - their statements regarding the means by which they received funds from their parents were not consistent. Chen stated that funds from his parents were converted to cryptocurrency in order to be sent from China to the U.S. But Xu, despite being the primary account holder of a joint Bank of America account that received approximately $1.6 million dollars' worth of funds from bank accounts belonging to her husband's parents in the months preceding the purchase of the Property, made no mention of cryptocurrency in connection with the home purchase. Xu only referenced money being sent from China to the U.S. with the assistance of friends of her Canadian-based uncle.

14. As described in paragraphs 46-48 of Exhibit 1, funds received by the referenced Bank of America account can be traced to an East West Bank account in the name of Chen's father, and can be in part sourced back to Link-Future Tech Co., LTD. During his interview, Chen stated

6

that funds to purchase the Property were indirectly received from Link-Future Tech Co., LTD, which he described as a company which converts cryptocurrency into U.S. dollars.

15. Based on my training and experience, even with significant funding from their parents, Chen and Xu live in a residence that does not align with their status and employment. Specifically, their single income of approximately $100,000.00 to $110,000.00 per year does not appear to support their 2022 purchase of a home and property valued at $1.3 million while retaining their prior home. Their combined assets, sudden upgrade in housing in 2022, identified cryptocurrency activity, as described here and in Exhibit 1, Chen's admissions about his involvement in a fraud scheme and the presence of electronic evidence of the scheme within the Property provide probable cause to believe the Property was purchased with funds that constitute proceeds of the "pig butchering" fraud scheme described in Exhibit 1 or were involved in the commission of a fraudulent offense, in violation of Title 18, United States Code, Sections 1956 (laundering of monetary instruments and conspiracy to commit money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity).

## Conclusion

16.     Based on the facts and circumstances set forth in this declaration, I submit that there exists probable cause to believe that the Property was purchased with funds that constitute proceeds of a "pig butchering" fraud scheme or were involved in the commission of a fraudulent offense, in violation of Title 18, United States Code, Sections 1956 (laundering of monetary instruments and conspiracy to commit money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity), and therefore is Subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), 981(a)(1)(C), and 19 U.S.C. §§ 1607-09 by 18 U.S.C. § 981(d).

I declare under penalty of perjury that the foregoing is true and correct.
Executed on February 8, 2024.

*/s/ Andrew C. Braley*
Andrew C. Braley, FBI Special Agent